UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RAKSHANDA TALIB-GRACE, et al.,
Plaintiffs,

v.

SAN DIEGO COUNTY, et al.,
Defendants.

Case No.: 25-cv-03698-AJB-DEB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HASSAN QURESHI, M.D. AND JAMES VELTMEYER, M.D.'S MOTION TO DISMISS**

**(Doc. No. 46)**

Before the Court is a motion to dismiss Plaintiffs' first amended complaint filed by Defendants Hassan Qureshi, M.D., and James Veltmeyer, M.D., (collectively "Defendants"). (Doc. No. 46.) Plaintiffs filed an opposition (Doc. No. 51), to which Defendants replied (Doc. No. 54).[1] For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss.

## I. BACKGROUND

The instant action centers on the tragic decompensation and death of Karim Talib ("Decedent") in San Diego Central Jail on July 29, 2025. (*See generally* Doc. No. 41, First

[1] The Court finds this motion suitable for determination on the papers and without need for oral argument. *See* CivLR 7.1.d.1.

Amended Complaint ("FAC").) Decedent was an 82-year-old wheelchair-bound man who "suffer[ed] from early onset of dementia, hypertension, bowel and urinary incontinence, and . . . mobility impair[ment] due to his frail condition." (*Id.* ¶ 34.) Decedent resided at a senior care facility that provided "full assistance" with Decedent's "activities of daily living" ("ADLs"), "medication management," and "enrichment activities." (*Id.* ¶¶ 35, 39.) On August 5, 2024, Decedent was arrested for physical assault of his roommate at the senior care facility and was booked at the San Diego County Jail, where he remained pending prosecution. (*Id.* ¶ 35–36.) On December 24, 2024, Decedent was deemed incompetent and transferred to Metro State Hospital for competency restoration; however, around May 14, 2025, Decedent "was determined to have no substantial likelihood to gain competency." (*Id.* ¶¶ 37–38.) At this point, the state clinician "specifically recommended [Decedent] would be placed in a mental health facility where he will be 'best served and cared for by qualified professional,'" "similar to the senior facility he had been residing in." (*Id.* ¶ 39.) When Decedent was transferred back to San Diego County Jail on May 24, 2025, these recommendations became a part of Decedent's electronic health records at the jail. (*Id.* ¶¶ 39–40.)

From May 27, 2025 to July 19, 2025, Decedent was housed in the Medical Observation Bed unit ("MOB"), where inmates receive a 24-hour individualized care plan and frequent monitoring, "because of [Decedent's] severe 'failure to thrive' and not being able to care for himself," which required MOB staff to assist with changing his diapers and other basic ADLs. (*Id.* ¶¶ 41, 43, 49.) There, Dr. James Veltmeyer, the doctor who oversaw care at MOB, "noted that [Decedent's] admitting diagnosis to be FTT, fall risk, wheelchair bound, needed help going to the bathroom, was incontinent both bowel and bladder, ADA mobility impaired related to advanced age, frailty, memory impairment[.]" (*Id.* ¶¶ 19, 42.) "However despite such a long list of restrictions and limitations requiring constant assistance from medical staff," and "[a]gainst policy restrictions," on July 19, 2025, Decedent was discharged by the charge nurse into an administrative segregation unit, 7/E, "with minimal assistance and observation." (*Id.* ¶¶ 51–52.)

From the day after Decedent was transferred to Unit 7/E until his death on July 28, 2025, other detainees consistently reported the entire unit smelled of feces; Decedent appeared unwell, was unresponsive, was in need of help, and should not be in administrative separation; Decedent's cell was accumulating uneaten food trays and untaken medications; Decedent's diaper was not being changed and his person was not being showered despite the fecal matter on his shirt, diaper, and wheelchair. (*Id.* ¶¶ 53–74.) Staff similarly reported Decedent did not or was unable to respond to questioning; was covered in feces and urine; was malodorous; was unable to care for himself; refused medication and food; was "disheveled, mute, no eye contact, withdraw, [sic] uncooperative, depressed, impoverished thoughts, slow." (*Id.* ¶¶ 57–64, 69–73.) However, staff failed to take vital signs or to conduct competency, suicide, or grave disability assessments, and ignored the concerns of other inmates about Decedent's well-being. (*Id.* ¶¶ 62, 66, 70–72, 76, 78, 82.) On July 28, 2025, after a week of decompensation while other detainees unsuccessfully requested help on his behalf, Decedent was found dead. (*Id.* ¶¶ 77–83, 85.)

Plaintiffs, who are Decedent's adult children, filed a complaint against the County of San Diego, NaphCare Inc., Kieko Fukue, Tony Underwood, Theresa Palafox, Bianca Bates, Rex Padilla, Edgar Timpug, Does 1–10, and the moving defendants Dr. Qureshi and Dr. Veltmeyer. (Doc. No. 1.) Defendants answered the complaint (Doc. No. 20), while all other defendants filed motions to dismiss (Doc. Nos. 21, 24). In ruling on the motions to dismiss the initial complaint, the Court granted Plaintiffs leave to amend. (*See* Doc. No. 40.) Pursuant to that leave, Plaintiffs filed the First Amended Complaint ("FAC"), which asserts five claims against Defendants: deliberate indifference to a substantial risk of harm to health in violation of the Fourteenth Amendment; violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act; elder abuse pursuant to the California Welfare and Institutions Code § 15657; negligence; and violation of the Tom Bane Civil Rights Act ("the Bane Act"), Cal. Civ. Code § 52.1. (*See generally* FAC.) Defendants now move to dismiss the complaint for failure to state a claim. (Doc. Nos. 46.)

## II. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "The court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at 732; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## III. DISCUSSION

Defendants move to dismiss all five causes of action asserted against them for failure to state a claim. (Doc. No. 46.) Plaintiffs oppose the motion on procedural and substantive grounds. (Doc. No. 51.)

### A. Procedural Issues (Fifth, Sixth, and Seventh Claims)

#### 1. Applicability of Seventh Claim

Defendants seek to dismiss Plaintiffs' seventh cause of action, (Doc. Nos. 46-1 at 16–17; 54 at 9); however, Plaintiffs state that "that cause of action is not asserted against these Defendants." (Doc. No. 51 at 34.) In looking at the language of the FAC, the negligence claim is pled against "Defendants, COUNTY, all named defendants, and all

DOE 6–8 defendants[.]" (FAC ¶ 146.) As Dr. Qureshi and Dr. Veltmeyer are "named defendants," the phrasing of this claim as currently pled includes both Defendants. Based on Plaintiffs' clear disclaimer against intending to have pled a negligence claim against Defendants, the Court **GRANTS** Defendants' motion to dismiss the seventh cause of action as to Dr. Qureshi and Dr. Veltmeyer.

### 2. Scope of Instant Motion

Plaintiffs assert that the instant motion exceeds the scope of the Court's order where it challenges causes of actions that Plaintiffs did not substantively amend with the FAC. (Doc. No. 51. at 6.) Defendants contend the motion is proper because (1) Plaintiffs substantively amended all causes of action making their motion compliant with the Court's order, (2) the limitation only applied to the defendants who challenged the initial complaint, not Dr. Qureshi and Dr. Veltmeyer who answered the initial complaint, and (3) Rule 12(g)(2) does not bar Defendants, who filed neither a prior motion to dismiss the initial complaint nor an answer to the FAC.

Defendants "assum[ption] that such order is inapplicable to them," (*see* Doc. No. 46 at 2 n.1), and, thus, they are permitted to file a 12(b)(6) motion after answering a previously complaint is "simply out of step with the practice in this Circuit," *see Sivakova v. Am. Honda Motor Co., Inc.*, No. CV 24-03354-MWF (MAAX), 2025 WL 2324632, at *4–5 (C.D. Cal. July 17, 2025) (collecting cases). "A motion asserting any [12(b)] defense[] must be made *before* pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added). "Interpreting FRCP Rule 12(b) to permit a defendant to submit a post-answer motion to dismiss an amended complaint attacking claims raised in the original complaint would render the 12(b) restriction on post-answer motions meaningless." *Power Probe Grp., Inc. v. Innova Elecs. Corp.*, 670 F. Supp. 3d 1143, 1147 (D. Nev. 2023); *see also Brooks v. Caswell*, No. 3:14-CV-01232-AC, 2016 WL 866303, at *3 (D. Or. Mar. 2, 2016) (holding the same "where the amendment merely substantiates existing claims"); *Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, No. SA CV 15–0837–DOC (JCGX), 2016 WL 10570248, at *6 (C.D. Cal.

Aug. 17, 2016) ("Holding that an amended complaint allows a defendant a fresh opportunity to bring a 12(b)(6) motion to dismiss as to claims raised by a prior—answered—complaint would undermine the requirements of the Federal Rule.").

Thus, courts in this Circuit have held that "a defendant may bring a Rule 12(b) motion objecting to an amended complaint only to the extent the challenges asserted in that motion are based on the new matter in the amended complaint." *Pascal v. Concentra, Inc.*, No. 19-CV-02559-JCS, 2020 WL 4923974, at *2 (N.D. Cal. Aug. 21, 2020); *see also Best Fresh LLC v. Vantaggio Farming Corp.*, No. 3:21-CV-00131-BEN-WVG, 2022 WL 4112231, at *9–10 (S.D. Cal. Sept. 8, 2022) (rejecting as "waived and untimely" arguments previously available to the defendant and considering only those arguments based on newly asserted allegations); *Townsend Farms*, 2016 WL 10570248, at *6 (collecting cases).

Here, Defendants move to dismiss five claims raised against them; however, the fifth, sixth, and seventh causes of action have no substantive changes with regard to these two defendants. (*Compare* Compl. ¶¶ 123–44 *with* FAC ¶¶ 125–48.) The Court **DENIES** Defendants' motion as to the fifth and sixth claims considering Defendants chose not to challenge the sufficiency of these allegations previously. *See, e.g.*, *Daniels v. Perreault*, No. 8:24-CV-02627-JVS-JDE, 2025 WL 1377826, at *1–2 (C.D. Cal. Apr. 24, 2025) (finding "the FAC did not open the door for Defendants to file a motion to dismiss" where the additional allegations "do not materially alter Defendants' liability under the FAC" and the motion raised arguments available to the defendants under the initial complaint); *Leung v. Fed. Deposit Ins. Corp.*, No. 24-CV-00337-NW, 2025 WL 1397205, at *6–7 (N.D. Cal. May 14, 2025) ("In keeping with other courts in this Circuit, the Court finds that FDIC-R's Answer to Counts 1-4 as alleged in the original complaint bars any attempts to move to dismiss those claims."); *Brinson v. California*, No. 25-CV-02381-DMR, 2025 WL 2967812, at *4 (N.D. Cal. Oct. 20, 2025); *Wiles Nagle v. City of San Jose*, No. 25-CV-05523-SVK, 2026 WL 1363158, at *3 (N.D. Cal. May 15, 2026). The Court will consider Defendants' challenges to the first and eighth causes of action due to the substantive amendments made that implicate Defendants' liability. *See, e.g.*, *Alexander v. Wells Fargo*

*Bank, N.A.*, No. 23-CV-617-DMS-BLM, 2023 WL 8358550, at *3 (S.D. Cal. Dec. 1, 2023) ("This Court will only consider Defendant's motion as it responds to new allegations in Plaintiff's amended complaint."). *Cf. Perez v. Cnty. of Kern*, No. 1:25-CV-00358-CDB, 2026 WL 1614077, at *5 (E.D. Cal. June 4, 2026) (permitting a motion to dismiss an amended complaint after previously answering "where Plaintiffs added new defendants and a not-insignificant number of new allegations").

**B. Deliberate Indifference (First Claim)**

Defendants argue that Plaintiffs fail to allege sufficient facts demonstrating that either Dr. Qureshi or Dr. Veltmeyer acted with deliberate indifference or demonstrating causation. (Doc. Nos. 46- at 10–13; 54 at 3–7.)

**1. Legal Standard**

"Under 42 U.S.C. § 1983, a private right of action exists against anyone who, 'under color of' state law, causes a person to be subjected 'to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Russell v. Lumitap*, 31 F.4th 729, 737 (9th Cir. 2022) (quoting 42 U.S.C. § 1983).

"[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (quoting *Gordon*, 888 F.3d at 1125). "[P]rison officials violate the Constitution when they

'deny, delay or intentionally interfere' with needed medical treatment," or when they "choose a course of treatment that is 'medically unacceptable under the circumstances.'" *Id.* at 679 (quoting first *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); then *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012)).

**2. Dr. Qureshi**

Defendants argue that the FAC does not plausibly support an inference that Dr. Qureshi acted with deliberate indifference but instead, at most, Plaintiffs challenge the adequacy of Dr. Qureshi's response. (Doc. No. 46-1 at 12.) Specifically, Defendants point to allegations that Dr. Qureshi was contacted regarding concerns that Decedent might not be eating and in response Dr. Qureshi arranged for an on-site medical evaluation. (*Id.*)

Plaintiffs counter that "Defendants materially understate the allegations against Dr. Qureshi." (Doc. No. 51 at 15.) Plaintiffs argue that the FAC alleges that Dr. Qureshi "evaluated Decedent on a 'Stat Care' basis while he was being monitored for possible failure to thrive and/or grave disability" and possibly not consuming food; however, Dr. Qureshi "failed to take vital signs, return Decedent to the MOB, order closer monitoring, and/or refer him to higher-level care, despite his own blatant observations of Decedent's continued decompensation." (*Id.*)

In the FAC, Dr. Qureshi is identified as a "correctional physician at the San Diego Central Jail" and "a duly authorized employee and agent of Defendant COUNTY and/or NAPHCARE, [who] was acting within the course and scope of his perspective duties as a correctional physician in the jail[.]" (FAC ¶ 20.) "On July 27 at 11:02 am, Dr. QURESHI evaluate[d] TALIB on a 'Stat Care' basis and noted that TALIB [wa]s being currently monitored for possible failure to thrive or grave disability but [wa]s unsure whether he [wa]s consuming food.' [sic] It is unclear who and with what frequency TALIB was being 'monitored' while housed in an administrative segregation unit with minimal monitoring. Dr. QURESH did not order TALIB to be reinstated to the MOB unit nor to be sent out for a higher level of care, nor order to take his vital signs." (FAC ¶ 63.) Plaintiffs then allege that Dr. Qureshi—pled as a unified group with Dr. Veltmeyer, Fukue, Palafox, Timpug,

Bates, Padilla, and Underwood—was "aware or should have been aware of Mr. TALIB's visible decline and dangerous fluctuations of his vital signs" but "failed to refer Mr. TALIB to higher level care[,] failed to order increased observation and monitoring including monitor his vital signs," "fail[ed] to assess that he was gravely disabled," despite "observing him groaning on the floor[,] in a state necessitating medical and hygienic intervention," as his "mental and physical condition was decompensating." (FAC ¶¶ 94–96.)

Both parties' characterizations of the FAC include the addition of absent allegations. Defendants assert that "Stat Care" is "an on-call service where nursing staff can contact off-site physicians or other mid-level providers during non-business hours," and that "Dr. Qureshi could not take vital signs himself, [but] he arranged for another provider to do so via an on-site evaluation[.]" (Doc. No. 54 at 3; *see also* Doc. No. 46-1 at 8 n.1.) None of these are allegations in the FAC. (*See generally* FAC.) Plaintiffs, for their part, assert that Dr. Qureshi had "his own blatant observations of Decedent's continued decompensation"; however, the only note attributed to Dr. Qureshi is that Decedent "is being currently monitored for possible failure to thrive or grave disability but is unsure whether he is consuming food." (FAC ¶ 63.) The FAC includes no allegations of what Dr. Qureshi observed.

Considering only the allegations in the FAC, it is unclear what Dr. Qureshi's evaluation of Decedent consisted of, what Dr. Qureshi observed, and what response if any Dr. Qureshi took. In fact, the assertion that Dr. Qureshi did not "*order* to take his vital signs" raises questions as to how the evaluation was conducted. (*See* FAC ¶ 63 (emphasis added).) Though Plaintiffs include three sentences referencing Dr. Qureshi individually (*id.*), the allegations are insufficient to make the subsequent group pleading permissible. *See, e.g.*, *Camou v. Cnty. of Los Angeles*, No. 2:24-CV-05748-SPG-AJR, 2024 WL 5316827, at *4 (C.D. Cal. July 23, 2024) ("[T]he Complaint's factual allegations are too scant and conclusory to show how each individual defendant personally violated Plaintiff's constitutional rights."); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1019 (S.D.

Cal. 2018) ("[G]roup pleading does not provide Defendants fair notice of the claims against them."). Even considering these minimal allegations in the light most favorable to Plaintiffs, there is not enough pled to plausibly infer that Dr. Qureshi made an intentional decision about Decedent's medical care that was objectively unreasonable during the one time he evaluated Decedent. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (noting district courts "not [to] accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations"); *see, e.g.*, *Est. of Schuck by & through Schuck v. Cnty. of San Diego*, No. 23-CV-785-DMS-AHG, 2024 WL 3489202, at *4 (S.D. Cal. July 19, 2024); *Cavanaugh v. Cnty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *13 (S.D. Cal. Nov. 12, 2020), *judgment entered,* No. 18-CV-02557-BEN-LL, 2020 WL 6702029 (S.D. Cal. Nov. 13, 2020), and *aff'd,* No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021). Because Plaintiffs fail to state a claim for deliberate indifference against Dr. Qureshi, the Court **GRANTS** Defendants' motions to dismiss the deliberate claim as to Dr. Qureshi.

**3. Dr. Veltmeyer**

Defendants argue that Plaintiffs fail to state a deliberate indifference claim against Dr. Veltmeyer because they do not allege that the care Decedent received during his stay in the MOB was constitutionally deficient nor do Plaintiffs identify any intentional decision by Dr. Veltmeyer that exposed Decedent to an unreasonable risk of harm. (Doc. No. 46 at 11.)

In opposition, Plaintiffs assert that they sufficiently allege that Dr. "Veltmeyer failed to secure higher-level care or close monitoring despite Decedent's medical vulnerabilities and deterioration," and that Dr. Veltmeyer's liability is based on his "involvement in Decedent's overall medical care, his knowledge of Decedent's high risk vulnerabilities, as well as his failure to ensure appropriate monitoring and/or escalation." (Doc. No. 51 at 16.)

In the FAC, Plaintiffs allege Dr. Veltmeyer "oversaw [Decedent's] overall care at the MOB." (FAC ¶¶ 19, 42.) Plaintiffs include a detailed account of Dr. Veltmeyer's observations of Decedent's physical and mental state while in the MOB and the high-level

of "24-hour individualized care" provided in the MOB. (*Id.* ¶¶ 42–43.) Plaintiffs allege that, "[f]rom May 19 to July 19, 2025, MOB staff routinely observed Mr. TALIB require assistance with changing his diapers and assistance with activities of basic daily living," and that, "[t]oward the end of his MOB stay, TALIB was still suffering from confusion, incontinence, was still mobility impaired requiring a wheelchair and still needed assistance with his activities of daily living." (*Id.* ¶¶ 49–50.) "However, despite such a long list of restrictions and limitations requiring constant assistance from medical staff, Mr. TALIB was discharged *by charge nurse DOE 1* into an administrative segregation unit with minimal assistance and observation." (*Id.* ¶ 51 (emphasis added).) There are no allegations that Decedent's treatment in the MOB generally or by Dr. Veltmeyer specifically was inadequate in any regard.

Because the FAC identifies Dr. Veltmeyer as the physician who oversaw Decedent's care at the MOB and fails to address how—if at all—he was involved with Decedent's care or ever even observed Decedent again after transfer out of the MOB, the FAC fails to state a claim for deliberate indifference against Dr. Veltmeyer. *See, e.g.*, *Yang v. Cnty. of Yuba*, No. 2:23-CV-00066-TLN-JDP, 2024 WL 3010876, at *6 (E.D. Cal. June 13, 2024) (finding allegations insufficient where "Plaintiffs do not allege [the defendant] was involved in any way with the decision to take [decedent] off suicide watch and transfer him back to general population, nor do Plaintiffs allege [the defendant] made any decisions regarding where [decedent] was housed, his monitoring, or what materials he was provided in his cell."). Without any factual allegations specifically connecting Dr. Veltmeyer to the subsequent allegedly inadequate treatment and conditions, the conclusorily-stated group-pled allegations are insufficient. *See Ileto*, 349 F.3d at 1200; *see also Victoria*, 326 F. Supp. 3d at 1019; *Camou*, 2024 WL 5316827, at *4. Because Plaintiffs fail to state a claim for deliberate indifference against Dr. Veltmeyer, the Court **GRANTS** Defendants' motions to dismiss the deliberate indifference claim as to Dr. Veltmeyer.

### C. Bane Act

Defendants move to dismiss the eighth cause of action brought pursuant to the Bane

Act because "Plaintiffs fail to allege any facts showing that Dr. Veltmeyer and Dr. Qureshi committed the alleged underlying constitutional violation, let alone facts showing either of them acted with the specific intent to do so." (Doc. No. 46-1 at 18–19.) Plaintiffs assert that the claim is sufficient because "the FAC plausibly alleges that each physician acted with deliberate indifference to Decedent's serious medical needs." (Doc. No. 51 at 33.)

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). Thus, "a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs adequately states a claim for relief under the Bane Act because deliberate indifference claims extend far beyond ordinary tort claims and have been associated with affirmatively culpable conduct." *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941, 964 (E.D. Cal. 2024) (cleaned up) (collecting cases).

In the FAC, Plaintiffs assert "Defendants acted with reckless disregard in failing to closely monitor, and treat Mr. TALIB's medical conditions as described more fully above," "by continuing to house Mr. TALIB in general population[,] and [by] failing to hospitalize him or otherwise escalate his level of care despite his showing visible signs of significant physical and mental deterioration." (FAC ¶ 153.) As noted by both parties, Plaintiffs allege the same conduct that constitutes their deliberate indifference claims forms the basis of the Bane Act claim. (*See id.* ¶ 151 n.2 (proffering cases where adequately pleading a claim for deliberative indifference supports the elements of a Bane Act claim).)

Because the Court has found that Plaintiffs fail to allege deliberate indifference to a

substantial risk of harm in violation of the Fourteenth Amendment, Plaintiffs' Bane Act claim also fails. *See, e.g.*, *Cravotta*, 717 F. Supp. 3d at 965. Accordingly, the Court **GRANTS** Defendants' motions to dismiss the Bane Act claims as to Dr. Qureshi and Dr. Veltmeyer.

**D. Leave to Amend**

Considering that leave should be freely given, that it is not clear that amendment would be futile, and that no prejudice or undue delay is argued, the Court **GRANTS** Plaintiffs leave to amend the FAC to cure the deficiencies with respect to the first and eighth causes of action as to Dr. Qureshi and Dr. Veltmeyer. *See* Fed. R. Civ. P. 15(a); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) ("[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."). Plaintiffs are not permitted leave to amend the seventh cause of action as Plaintiffs concede they did not intend to plead negligence against Dr. Qureshi and Dr. Veltmeyer.

## IV. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss. (Doc. No. 46.) The Court **ORDERS** as follows:

1. Dr. Hassan Qureshi and Dr. James Veltmeyer's motion to dismiss is **GRANTED** as to the first, seventh, and eighth causes of action.

2. The instant motion to dismiss is **DENIED** in all other respects.

3. Plaintiffs are **GRANTED** limited leave to amend as identified *supra* § III.D. However, the exact scope and timing of such leave will be addressed upon the Court's resolution of the remaining defendants' motions to dismiss the FAC.

**IT IS SO ORDERED.**

Dated: October 8, 2026

Hon. Anthony J. Battaglia
United States District Judge